**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TAHMINA KHAN,<br><br>Plaintiff,<br><br>v.<br><br>IBR, INC., *et al.*,<br><br>Defendants. | Civil Action No. 25-2266 (EGS) |

**MEMORANDUM OPINION**

## I. Background

Plaintiff Tahmina Khan ("Ms. Khan") worked at a Subway restaurant located on the campus of George Washington University as a sandwich preparer and cashier for approximately five years. *See* Compl., ECF No. 1 ¶ 8-10.[1] The restaurant is owned and operated by Defendants IBR, Inc. ("IBR") and Toha Islam ("Mr. Islam") (collectively, "Defendants"). *Id.* ¶ 8. Ms. Khan alleges that Defendants willfully failed to pay her overtime wages by paying her a lower rate for overtime hours than she was paid for her regular hours. *Id.* ¶ 1. Ms. Khan brought this action to recover damages for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; the District of Columbia Minimum Wage Revision Act ("DCMWA"), D.C. Code § 32-1001, *et*

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

*seq.*; and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301, *et seq*.

Ms. Khan filed her Complaint on July 16, 2025, alleging that Defendants failed to pay her overtime wages in accordance with the FLSA, the DCMWA, and the DCWPCL by paying her a lower overtime wage than her regular wage. *See* Compl., ECF No. 1. Mr. Islam was properly served on July 24, 2025, *see* Return of Serv. Aff., ECF No. 4; and IBR was properly served on August 14, 2025. *See* Return of Serv. Aff., ECF No. 5. Defendants failed to answer or otherwise respond to the Complaint. The Clerk of Court entered a default against both on October 16, 2025. *See* Entry of Default, ECF No. 9; Entry of Default, ECF No. 10. Ms. Khan filed this Motion for Default Judgment on January 2, 2026, *see* Mot. for Default J. ("Mot."), ECF No. 11; to which no response was received.

On August 11, 2026, the Court ordered Ms. Khan's counsel to submit billings records to support their request for reasonable attorneys' fees and costs. *See* Minute Order (Aug. 11, 2026). On August 15, 2026, Ms. Khan's attorneys submitted the same to the Court with updated fees and costs. Pl.'s Resp. to Aug. 11, 2026 Minute Order, ECF No. 12.

The motion is now ripe for review.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, there is "a two-step process for a party seeking default judgment: entry of default, followed by entry of default judgment." *Farris v. Rice*, No. 05-1975, 2006 WL 8435181, at *1 (D.D.C. Jan. 17, 2006). "If a defendant has failed to plead or otherwise defend against an action, the plaintiff may request that the clerk of the court enter default against that defendant." *Simon v. U.S. Dep't of Just.*, No. 20-850, 2020 WL 4569425, at *2 (D.D.C. Aug. 7, 2020) (citing FED. R. CIV. P. 55(a)). "After the clerk's entry of default, the plaintiff may move for default judgment." *Id.* (citing FED. R. CIV. P. 55(b)(2)). Pursuant to Rule 55(b)(2), the "determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Flynn v. JMP Restoration Corp.*, No. 10-0102, 2010 WL 1687950, at *1 (D.D.C. Apr. 23, 2010) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). For the Court to determine whether default judgment is appropriate, a "defendant must be considered a 'totally unresponsive' party and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Id.* (quoting *Gutierrez v. Berg Contracting Inc.*, No. 99-cv-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)).

> The law is clear ... [that a defendant's] failure to appear and the Clerk's subsequent entry of default against it do not automatically entitle plaintiff to a default judgment. Indeed, a default is not an absolute confession by the defendant of his liability and of the plaintiff's right to recover, but is instead merely an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability.... First, the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief.... In other words, a default judgment cannot stand on a complaint that fails to state a claim.

*Harris v. U.S. Dep't of Just.*, 600 F. Supp. 2d 129, 136 (D.D.C. 2009) (quoting *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 26–27 (D.D.C. 2008) (citation modified). "Thus, unless the complaint states a claim upon which relief may be granted as to the defendants who have defaulted, default judgment is not justified." *Id.* at 136–37.

After the Court grants a default judgment to establish the defendant's liability, it is still required to make an "independent determination of the sum to be awarded unless the amount of damages is certain." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002). "In doing so, a court need not conduct an evidentiary hearing if it can establish a basis for the damages amount through detailed affidavits or other documentary

evidence." *Zaldaña v. Morrogh*, Civil Action No. 20-3810, 2022 WL 203471, at *3 (D.D.C. Jan. 24, 2022).

## III. Analysis

### A. Ms. Khan Has Stated a Claim Upon Which Relief May Be Granted

Both the FLSA and the DCMWA require employers to pay non-exempt employees overtime payments at a rate of one-and-a-half times the employee's regular wage worked in excess of forty (40) hours per week. 29 U.S.C. § 207(a)(1); D.C. Code § 32-1003(c). The DCWPCL requires that employers pay an employee who is discharged their wages no later than the following working day, which includes any overtime pay. D.C. Code §§ 32-1301(3), 1303(1).

First, Ms. Khan alleges that Defendants were her employers subject to the FLSA, DCMWA, and DCWPCL. The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The DCMWA's and DCWPCL's definitions of "employer" are substantially similar. *See* D.C. Code § 32-1002(3) ("any individual . . . [or] corporation"); D.C. Code § 32-1301(1B) ("every individual . . . [or] corporation . . . employing any person in the District of Columbia"); *see also Serrano v. Chicken-Out, Inc.*, 209 F. Supp. 3d 179, 189 (D.D.C. 2016)

("[D]eterminations of employer or employee status under the FLSA apply equally under the District of Columbia wage laws.").

Second, Ms. Khan alleges that she is an "employee" under the statutes. Under the FLSA and DCMWA, an employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1); D.C. Code § 32-1003(c). The DCWPCL defines an employee substantially similarly. *See* D.C. Code § 32-1301(2) ("any person suffered or permitted to work by an employer").

Because these statutory definitions are broad, the Court uses the "economic reality test" to determine whether Ms. Khan was employed by the Defendants, which considers "the extent to which typical employer prerogatives govern the relationship between the putative employer and employee." *Gallagher v. Eat to the Beat, Inc.*, 480 F. Supp. 3d 79, 86 (D.D.C. 2020) (citing *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)). In applying the test, courts consider "the totality of the circumstances of the relationship between the plaintiff/employee and defendant/employer to determine whether the putative employer has the power to hire and fire, supervise and control work schedules or conditions of employment, determine rate and method of pay, and maintain employment records." *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5 (D.D.C. 2010) (internal citation omitted). To establish individual liability, Ms. Khan must show that Mr. Islam qualifies as an employer under the

applicable statutes. *See Amaya v. Logo Enters., LLC*, 251 F. Supp. 3d 196, 200 (D.D.C. 2017).

Ms. Khan alleges that Mr. Islam hired and fired her, set and controlled her work schedule, set her rate and manner of pay, supervised and controlled her work, and signed her paychecks on behalf of IBR and had the authority to do so. *See* Compl., ECF No. 1 ¶¶ 22–29. Ms. Khan also alleges that Mr. Islam is an "owner and officer of [IBR]" and "exercised control over the operations of [IBR]—including its pay practices." *Id.* ¶ 7. Because Ms. Khan pled sufficient facts to show that Mr. Islam is an individual "who exercises operational control over an employee's wages, hours, and terms of employment qualifies as an 'employer,'" *Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 26–27 (D.D.C. 2014); Mr. Islam is subject to individual liability under the FLSA. The Court concludes that Ms. Khan has pled sufficient facts to show that she was an employee of Defendants.

Ms. Khan alleges that Defendants violated the FLSA and DCMWA when they did not pay her one-and-a-half her regular hourly rate for all hours worked in excess of forty hours a week. *See* Compl., ECF No. 1 ¶¶ 35–45. She also alleges violations of the DCWPCL for failure to pay all wages due to her, including overtime wages, no later than the next working day after she was discharged. *See id.* ¶¶ 46–51. Her assertions are supported by detailed allegations in her Complaint, which

are sufficient to plead Defendants' statutory violations. *See Portillo v. Smith Commons DC, LLC*, Civil Action No. 20-49, 2022 WL 3354730, at *4 (D.D.C. Aug. 13, 2022).

Because Defendants have failed to respond to Ms. Khan's well-pled allegations of violations of the FLSA, DCMWA, and DCWPCL, as well at the Entry of Default and Ms. Khan's Motion for Default Judgment, the Court concludes that Defendants are liable for these violations.

**B. Ms. Khan Is Entitled to Damages**

**1. Unpaid Wages**

"When a defendant has failed to respond, the court must make an independent determination—by relying on affidavits, documentation, or an evidentiary hearing—of the sum to be awarded as damages." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 104 (D.D.C. 2015). Moreover, it is "a long-standing principle in wage law that where an employer fails to produce records of the employee's hours and wages, the employee can meet their burden of proof by producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Serrano*, 209 F. Supp. 3d at 179. Ms. Khan has submitted an affidavit, summarizing the hours she worked each workweek during her employment between May 1, 2020 and May 31, 2025. *See* Aff. of Tahmina Khan, ECF No. 11-1. Ms. Khan attests that between July 13, 2022 and January 2, 2024, she

worked approximately fifty-three (53) hours each workweek; between January 3, 2024 and February 25, 2025, she worked approximately fifty-five (55) hours each workweek; between February 26, 2025 and March 25, 2025, she worked approximately fifty-eight (58) hours each workweek; and between March 26, 2025 and June 3, 2025, she worked approximately sixty-five (65) hours each workweek. *Id.* ¶¶ 7-10.

Ms. Khan also includes her regular hourly rates during that time, which correspond with the District of Columbia's minimum wage: between July 13, 2022 through January 10, 2023, she was paid $16.10 per hour; between January 11, 2023 and July 11, 2023, she was paid $16.50 per hour; between July 12, 2023 and June 25, 2024, she was paid $17.00 per hour; and between June 26, 2024 and June 3, 2025, she was paid $17.50 per hour. *Id.* ¶ 11; *see also* State Minimum Wage Rate for District of Columbia, FEDERAL RESERVE BANK OF ST. LOUIS, https://fred.stlouisfed.org/series/STTMINWGDC (last visited Aug. 11, 2026) (showing D.C. minimum wage data).

Ms. Khan is entitled to the difference between what she is statutorily owed and the actual wages she was paid. *See Saravia v. Yuan Profit, Inc.*, Civil Action No. 20-232, 2023 WL 2585675, at *4 (D.D.C. Mar. 17, 2023). Ms. Khan states that she was paid only $9.00 per overtime hour. Aff. of Tahmina Khan, ECF No. 11-1 ¶ 13. Ms. Khan states that she is owed $36,604.95 in unpaid

overtime wages and provides a table of calculations that show the difference between what she was statutorily entitled to be paid for her overtime work and what she was actually paid. *See* Mot., ECF No. 11 at 5; Exhibit B to Mot., ECF No 11-2.

The Court agrees with Ms. Khan's calculations, which the Court has independently confirmed. The following chart summarizes Ms. Khan's calculations:

| Number of Weeks | OT Hours Worked | Regular Hourly Wage | OT Wage Due (per week) | OT Wage Paid (per week) | OT Wage Owed (per week) | Total for Period |
|---|---|---|---|---|---|---|
| 26 | 13 | $16.10 | $313.95 | $117.00 | $196.95 | $5120.70 |
| 26 | 13 | $16.50 | $321.75 | $117.00 | $204.75 | $5323.50 |
| 25 | 13 | $17.00 | $331.50 | $117.00 | $214.50 | $5362.50 |
| 25 | 15 | $17.00 | $382.50 | $135.00 | $247.50 | $6187.50 |
| 35 | 15 | $17.50 | $393.75 | $135.00 | $258.75 | $9056.25 |
| 4 | 18 | $17.50 | $472.50 | $162.00 | $310.50 | $1242.00 |
| 10 | 25 | $17.50 | $656.25 | $225.00 | $431.25 | $4312.50 |
| TOTAL | | | | | $36,604.95 | |

**2. Liquidated Damages**

Based on the allegations in her Complaint, Ms. Khan requests unpaid wages, liquidated damages, and attorneys' fees and costs pursuant to the FLSA, DCMWA, and DCWPCL. *See* Mot., ECF No. 11 at 4. However, she requests that the Court award liquidated damages based on the more generous statute, which in this case is the DCWPCL. *Id.* "[B]ecause D.C. law is more generous to employees on the point of liquidated damages, the Court will . . . assess damages under D.C. law and will not

award a duplicative amount pursuant to federal law," *Herrera v. Mitch O'Hara LLC*, 257 F. Supp 3d 37, 44 (D.D.C. 2017); which, in this case, is the DCWPCL.

If an employer fails to pay an employee their wages as required under the statute, the DCWPCL stipulates that, in addition to their unpaid wages, as liquidated damages, the employee is entitled to "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller." D.C. Code § 32-1303(4); *see also Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 123 (D.D.C. 2016) ("[T]he liquidated-damages provision of the DCWPCL awards treble damages as liquidated damages *in addition to* the actual damages in the form of unpaid wages." (emphasis in original)). Here, because the smaller sum of the two is treble damages, the Court awards Ms. Khan $109,814.85 in liquidated damages.

**3. Attorneys' Fees and Costs**

Ms. Khan requests that she also be awarded reasonable attorneys' fees and costs. *See* Mot., ECF No. 11 at 6. The FLSA, DCMWA, and DCWPCL "all require that a prevailing plaintiff receive an attorneys' fee award." *Herrera*, 257 F. Supp. 3d at 46. The Court has an obligation to determine that the amount it awards is reasonable. *Id.*

The DCWPCL requires that attorneys' fees be calculated pursuant to the matrix approved in *Salazar v. District of Columbia*,[2] which is the "LSI *Laffey* matrix," and that the attorneys' fees are updated to account for the market hourly rates for attorney's services "in effect at the time the determination is made." D.C. Code § 32-1308(b)(1). Ms. Khan's counsel submitted an affidavit with the pending motion, which includes the LSI *Laffey* matrix, attesting that they have incurred $10,333.40 in fees and $591.50 in costs. *See* Exhibit C to Mot., ECF No. 11-3; Exhibit D to Mot., ECF No. 11-4. Pursuant to the Court's Order, Ms. Khan's counsel submitted their billing records, including the fees and costs incurred in the preparation of the instant motion and the time spent preparing the response to the Court's Order. *See* Pl.'s Resp., ECF No. 12. Courts in this district have updated fee awards based on additional submissions indicating that additional work was done since the submission of the original motion, even if the opposing party did not have an opportunity to respond. *See* *Bennett v. Castro*, 74 F. Supp. 3d 382, 406–07 (D.D.C. 2014) (granting fee award based on submissions included in the plaintiff's reply despite the defendant not having an opportunity to respond).

[2] 123 F. Supp. 2d 8 (D.D.C. 2000).

The billing records show that counsel incurred eleven (11) attorney hours at a rate of $1,100 per hour, and twelve (12) support staff hours at a rate of $299 per hour.[3] *See* Exhibit A to Pl.'s Resp., ECF No. 12-1. Having carefully reviewed the billing records, the Court is satisfied that the tasks completed were not duplicative nor that the time spent was excessive, and therefore finds the hours spent on this case reasonable. However, the Court will reduce the award by $1,100 to reflect the hour spent responding to the Court's order, as counsel failed to provide necessary supporting documentation to the Court with the instant motion, and "the Court must not award fees for unnecessary work." *See Louise Trauma Ctr. LLC v. Wolf*, No. 20-cv-2348, 2024 WL 4227617, at *6 (D.D.C. Sept. 18, 2024) (citation modified). Therefore, the Court awards attorneys' fees of $14,555.60 and costs of $591.48.[4]

[3] These rates are equivalent to the current rate set by the *LSI* Laffey index, and therefore the Court is satisfied that these rates are appropriate.

[4] Ms. Khan requests that she be awarded $591.50 in costs; however, the billing records indicate that the actual amount incurred was $591.48. The Court will therefore award the actual costs incurred.

## IV. Conclusion

For the reasons set forth in this Memorandum Opinion, the Court **GRANTS** Ms. Khan's Motion for Default Judgment.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed: Emmet G. Sullivan**
**United States District Judge**
**September 5, 2026**